IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Proctor Heirs Trust,<br><br>Plaintiffs,<br><br>v.<br><br>EQT AMD LLC, EQT ARO LLC, INTERNATIONAL DEVELOPMENT CORP., and SWN PRODUCTION COMPANY, LLC,<br><br>Defendants. | Civil Action No. 21-cv-1491<br><br>(Chief Judge Brann) |

**PLAINTIFFS' BRIEF IN OPPOSITION TO THE
MOTION FOR STAY OF EQT AMD LLC AND EQT ARO LLC**

The question before the Court is not whether a stay should be granted, but rather, what should be the scope of any stay. This action presents claims by Plaintiffs, the trustees of the Thomas E. Proctor Heirs Trust (the "Proctor Trust"), seeking to quiet title to the subsurface estate of 44 tracts of land. Unlike a typical "title wash" case, this action presents issues that no modern-era case has addressed, including the case pending before the United States Court of Appeals for the Third Circuit at *Pennsylvania Game Comm'n v. Thomas E. Proctor Heirs Trust*, No. 22-1587 (the "*PGC* case"). A threshold issue is whether Defendants can claim title to the subsurface estate from 1930s mineral rights tax sales that were statutorily redeemed in 1950. Prior to addressing any issues involving the supposed tax

1

"wash" sales, this Court will need to address the impact of the 1950s redemptions. No question before the Third Circuit or potentially before the Pennsylvania Supreme Court in the *PGC* case will address, let alone impact, this issue.

Following that threshold determination, the 44 tracts can be divided into four categories that present distinct legal issues. For 13 of those tracts, referred to as the Unassessed Properties in the Complaint, the Proctor Trust agrees that the facts and legal issues align with the *PGC* case. Therefore, the Proctor Trust has no objection to a stay of claims involving those 13 Unassessed Properties. However, the remaining 31 properties, which include the No Sale Properties, the Separately Assessed Properties and the Cotenant Properties (all defined below), raise legal issues that are not addressed by the *PGC* case. Put simply, regardless of the outcome of the *PGC* case, this case presents issues that this Court will need to address. Accordingly, the Proctor Trust requests that the Court deny EQT AMD LLC and EQT ARO LLC's (collectively "EQT") Motion to Stay with respect to these 31 properties.

## FACTUAL AND PROCEDURAL HISTORY

### A. The *PGC* Case

In the *PGC* case, the Pennsylvania Game Commission brought claims against the Proctor Trust asserting that the Game Commission held title to the subsurface estate due to tax sales orchestrated by the Game Commission's predecessor in title, the Central Pennsylvania Lumber Company ("CPLC"). The Game Commission claimed that these CPLC tax sales eliminated the Proctor

reservation of the subsurface estate through a so-called "title wash." Following a bench trial on a bellwether tract, the Honorable Christopher C. Conner entered judgment in favor of the Proctor Trust on the bellwether tract, concluding that the tax sale purchaser, Calvin H. McCauley, Jr., was an agent of CPLC and that his tax sale purchase effectuated a redemption because CPLC had a duty to pay the tax. Following entry of the judgment, the District Court certified a single question for interlocutory appeal: Under Pennsylvania law at the relevant times, "did the owner of an unseated surface estate have a legal duty to pay taxes assessed on said surface estate, thereby preventing the owner—or the owner's agent—from acquiring better title to the land at a tax sale induced by the unseated surface owner's default." *Pennsylvania Game Comm'n v. Thomas E. Proctor Heirs Trust*, No. 12-cv-01567, Doc. 229 at 3 (Jan. 28, 2022).

## B. The Claims Involving the 31 Properties

Similar to the *PGC* case, Defendants claim that CPLC tax sales between 1908 and 1928 eliminated the Proctor subsurface estate. However, several factual and legal issues depart from the issues presented in the *PGC* case:

- Following the sale of the surface estate from CPLC to the state, the premises were subject to "mineral rights" sales in the 1930s. These 1930s tax sales were statutorily redeemed from the county in 1950, but Defendants appear to

dispute these redemptions. The *PGC* case did not address mineral rights tax sales, statutory redemptions, or redemptions from the county.

- <u>4 tracts</u> within the premises were never subject to a CPLC tax sale ("No Sale Properties"), which include Josiah Harmer, Peter Miller, Mary Garity, and Daniel Delaney. Because the properties did not go through a supposed "wash" sale, CPLC never could have acquired the subsurface rights under any legal theory. Unlike Defendants, the Game Commission did not assert title over properties that did not go through a tax sale.

- <u>10 tracts</u> within the premises were subject to separate assessments of the subsurface estate ("Separately Assessed Properties"), which include David George, John Singer, John Price, William Chancellor, Walter Stewart, Robert Shaw, Samuel Miles Jr., Jacob Morgan, William Stewart, and Michael Gratz. The caselaw makes clear that a tax sale of the surface estate can never encompass a *separately assessed* subsurface estate. The *PGC* case does not address separately assessed properties.

- <u>17 tracts</u> within the Premises were owned by both CPLC and the Proctor heirs as cotenants, with CPLC owning an undivided 3/4 interest and the Proctor heirs owning an undivided 1/4 interest in the Subsurface Estate ("Cotenant Properties"), which include Benjamin Smith, William Lewis, Robert Rankin, Joseph Thomas, George Barclay, Thomas George, William Rawle, Clement

Biddle, Joseph Fox, Edward George, John Hawkins, Edward Tilghman, George Tudor, Sampson Levy, Jonathan Mifflin, Jonathan Supple, and Algernon Roberts. The law prohibits a cotenant from acquiring title adverse to its other cotenants by means of a tax sale. Therefore, CPLC's reacquisition of these Cotenant Properties following a tax sale inures to the benefit of the Proctor heirs. The *PGC* case did not involve or address Cotenant Properties.

In sum the claims involving the 31 properties raise issues and legal arguments not addressed by the *PGC* case. Instead, the claims are rooted in distinct areas of Pennsylvania law.

## ARGUMENT

### A. The PGC Case Will Not Address the Legal Arguments Raised for the Redemption Properties, the No Sale Properties, the Separately Assessed Properties or the Cotenant Properties

The *PGC* case will impact claims involving the 13 Unassessed Properties. However, the No Sale Properties, the Separately Assessed Properties and the Cotenant Properties, have key factual differences that raise legal issues not addressed by the *PGC* case. Instead, distinct lines of Pennsylvania precedent control resolution of title to these 31 properties.

Indeed, from the outset of this dispute, the Proctor Trust has forged a separate path for resolution of the 31 properties. Starting with the original action at Case No. 20-cv-00838, in the proposed joint case management plan filed on August 24, 2020, the Proctor Trust proposed filing an early motion for partial

5

summary judgment with respect to the No Sale Properties, the Separately Assessed Properties and the Cotenant Properties to narrow the issues. Case No. 20-cv-0838, Doc. No. 030. And that motion for partial summary judgment was filed on January 8, 2021. Case No. 20-cv-0838, Doc. No. 058. After a jurisdictional issue ultimately led to voluntary dismissal of the original action,[1] the Proctor Trust filed this action on August 30, 2021 and filed the same motion for partial summary judgment on November 23, 2021. *See* Doc. No. 32. Although that motion is no longer pending before this Court, a review of the partial summary judgment brief demonstrates that the claims associated with the 31 properties are markedly distinct from the *PGC* case. *See* Pls.' Partial Summ. J. Br., Doc. No. 34. Indeed, in the summary judgment brief, there is no reference to any duty to pay the tax on unseated lands (the certified question on interlocutory appeal to the Third Circuit in the *PGC* case), nor is there any citation to Judge Connor's opinion or judgment in that case. The absence of any connection or reliance on the *PGC* case is because the arguments and issues on the 31 properties are based on separate legal grounds under Pennsylvania law.

As a preliminary matter, EQT's and IDC's claims to the title to the subsurface estate start with a series of mineral rights tax sales in 1936 and 1938 (the "1930s Tax Sales"). Certified copies of the 1930s Tax Sales deeds establish that those tax sales were statutorily redeemed in 1950, which "operated to set aside

---

[1] Shortly after the summary judgment filing, EQT's predecessor in title asserted it lacked diversity from all Plaintiffs. After EQT acquired title from that predecessor, those jurisdictional hurdles were removed.

or annul the sale," leaving "the title precisely as though the sale had not been made." *Yocum v Zahner,* 29 A. 778, 779 (Pa. 1894). Prior to addressing any issues involving the CPLC tax sales, this Court will need to address the impact of the 1950s redemptions. The *PGC* case does not address a statutory redemption or mineral rights only tax sales. No question before the Third Circuit or potentially before the Pennsylvania Supreme Court will address, let alone impact, this issue. The statute of limitations argument that EQT seemingly relies upon for its claims has no impact on the 1950s redemptions. If the sale is redeemed, it is null and void, and no statute of limitations can breathe life into a void sale. *Trexler v. Africa*, 33 Pa. Super. 395, 410 (1907). Thus, resolution on the 1950s redemptions is necessary regardless of the outcome in the *PGC* case. EQT cannot justify delay on that front.

Once the 1950s redemptions are disposed of, there comes the question of what the state of the title to the subsurface estate was prior to the 1930s Tax Sales – this is the title restored by the 1950s redemptions. The three categories of properties comprising the 31 Properties that should be excluded from any stay eschew the "title wash" world.

For the No Sale Properties, CPLC did not allow a tax sale of the surface estate meaning no "title wash" could ever occur. There is no CPLC tax sale so all the issues raised in the *PGC* case go away – there is no question of a tax sale purchaser's agency or any duty to pay taxes. The title remained in Proctor and his heirs.

Similarly, the claims for the Separately Assessed Properties do not rest on any arguments at issue in the *PGC* case. Indeed, EQT's and IDC's predecessors in title admitted that CPLC did not hold title to the subsurface of the Separately Assessed Properties prior to the 1930s Tax Sales and that admission was adopted as a finding of fact. *See* Findings of Fact, *Estate of Clarence Moore v. Commonwealth of Pennsylvania*, No. 1010 (Pa. Board of Claims 1999), attached hereto as Exhibit 1, at ¶ 5. This admission was well-founded on the undisputed fact that the subsurface estate of those properties was separately assessed prior to any CPLC tax sale of the surface. A tax sale of the surface cannot encompass a separately-assessed subsurface estate. *Sanderson v. City of Scranton*, 105 Pa. 469, 469 (1888) ("Where the surface of lands and the minerals in place thereunder have been severed…each owner can be made responsible only for the tax on his interest, whether underlying strata or surface."). Therefore, the CPLC Tax Sales of the surface estate of the Separately Assessed Properties did not – and could not – encompass the separately assessed subsurface estate. *New York State Nat. Gas Corp. v. Swan-Finch Gas Dev. Corp.*, 278 F.2d 577, 579 (3d Cir. 1960) ("a tax deed conveys only such interest as was actually assessed to the defaulting taxpayer.").

The entire concept of "title wash" that Defendants have relied upon requires the absence of a separate assessment so it is hard to imagine on what grounds

Defendants base their title.[2]  Importantly for purposes of the present motion, the arguments raised in the *PGC* case do not involve separately assessed properties.

Likewise, the *PGC* case does not involve any properties in which the Proctor Trust and CPLC were cotenants of the subsurface estate.  Pennsylvania has a well-developed body of caselaw prohibiting one cotenant from eliminating another cotenant's interest by means of a tax sale.  *See Lund v. Heinrich*, 189 A.2d 581, 583 (Pa. 1963) (collecting cases).  For the Cotenant Properties, Proctor and his heirs owned an undivided 25% interest in the subsurface estate and CPLC owned the remaining 75% interest prior to the CPLC tax sales.  Under a line of Pennsylvania cases distinct from the law addressed in the *PGC* case, CPLC's post-tax sale acquisition of the property inured to the benefit of its cotenant – the Proctor heirs.  *Tanney v. Tanney*, 28 A. 287, 287–89 (Pa. 1893).

As set forth above, the claims for the 31 properties do not rest on the arguments or findings in the *PGC* case.  Distinct, independent grounds exist for the Proctor Trust's claim to title for those properties. Any stay involving the 31 properties would not simplify the issues or promote judicial economy.[3]   There is no reason to delay (or further delay) a resolution of these issues.

---

[2] EQT asserts that it will present evidence that the Separately Assessed Properties were "not" separately assessed.  While the Proctor Trust questions this claim based on the already produced assessment records, this theoretical dispute does not warrant a stay.  Instead, EQT can present its evidence and arguments in connection with any summary judgment motion.

[3] If the *PGC* case is affirmed on the duty to pay tax grounds, that will provide the Proctor Trust with an alternative basis for a favorable judgment in this case, but the Court would still need to address the effect of the 1950 redemptions.

### B. EQT Has Failed to Explain How the Two-Year Limitations in the Act of 1815 Could Apply to the 31 Properties.

EQT claims that the two-year limitations in the Act of 1815 should apply to the Separately Assessed Properties and possibly to the Cotenant Properties and therefore a stay is warranted. As an initial matter, the limitations argument raised in the *PGC* case was not certified for interlocutory appeal.

More importantly, EQT has not explained *how* the limitations would apply to the Separately Assessed Properties or the Cotenant Properties. EQT makes much of the fact that the parties in the *PGC* case briefed the limitations issue, but it fails to explain how those arguments could extend to the claims for the 31 properties. In a footnote, EQT states that the "Pennsylvania Supreme Court's ruling regarding the two-year limitations period will unassailably bear directly on the propriety of PHT's claims as to these [Separately Assessed] 10 tracts." EQT Br., Doc. 51, at 6 n.2. Aside from this bold declaration, the only "support" for this assertion is EQT's claim that it will present evidence that the Separately Assessed Properties were "not" separately assessed.

Ironically, EQT's advancement of the limitations argument undermines its position in the *PGC* case. EQT attempts to use the limitations period to scoop up more property than what was actually assessed and sold. The concept of a "title wash" rests on the assertion that the property was assessed and sold as a "whole" rather than by the severed estates reflected in the recorded title. *Herder Spring Hunting Club v. Keller*, 143 A.3d 358, 368 (Pa. 2016) ("the issues in this case turn on whether the taxes assessed and not paid in 1935 were assessed on the Eleanor

10

Siddons Warrant as a whole or merely upon the surface estate"). Therefore, a claim asserting a "title wash" necessarily requires a determination as to *what* was assessed and sold. EQT, however, seeks to claim that a tax sale encompassed a severed subsurface estate, but then uses the limitations period to preclude any inquiry into the scope of the assessment and sale. This strategy would allow any tax sale purchaser to claim property far in excess of what was actually assessed and sold. Trying to extend this logic to property that was *in fact separately assessed* goes beyond the pale. A tax sale purchaser cannot assert a tax sale included someone else's separately-assessed property 100 years after the sale and then hide behind the limitations period. The limitations period is limited to "cur[ing] mere formal irregularities" in the assessment and sale process. *City of Scranton v. O'Malley Mfg. Co.*, 19 A.2d 269, 272 (Pa. 1941). The Act of 1815 does not—and, by necessity, could not—prevent a court from determining what in fact was assessed and sold. *Morton v. Harris*, 9 Watts 319, 325 (Pa. 1840) (Act of 1815 does not cure a sale where the assessment is not sufficient to "distinguish what particular tract was taxed and sold").

As set forth above and in the summary judgment brief, the claims to the 31 properties are not challenges to the tax sales. Pennsylvania caselaw dictates the scope and effect of the CPLC tax sales and the 1950s redemptions. The arguments made by the Game Commission and EQT in the *PGC* case, including the two-year limitation argument, have no application to the 31 properties.

## CONCLUSION

For the foregoing reasons, the Proctor Trust respectfully requests that the Court deny EQT's motion for stay with respect to the 31 properties identified in the Complaint as the No Sale Properties, the Separately Assessed Properties and the Cotenant Properties, deny EQT's motion to dismiss, order EQT to answer the Complaint, enter a stay on the properties identified in the Complaint as the Unassessed Properties, and grant any other relief that this Court deems just and appropriate.

Dated: June 20, 2023

Respectfully submitted,

/s/ *Laura A. Lange*
Laura A. Lange (PA 310733)
1670 Sturbridge Drive
Sewickley, PA 15143
lange@proctortrust.com

Justin G. Weber (PA 89266)
TROUTMAN PEPPER
Suite 200, 100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181
717.255.1155
717.238.0575 (fax)
Justin.Weber@troutman.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court today via the Court's CM/ECF, and that, pursuant to Local Civil Rule 5.7, participants in the case who are registered ECF users will be served by the ECF system.

Dated:  June 20, 2023               /s/ *Laura A. Lange*