IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Procter Heirs Trust, | No. 4:21-CV-01491 |
| | (Chief Judge Brann) |
| Plaintiffs, | |
| v. | |
| EQT AMD LLC, EQT ARO LLC, INTERNATIONAL DEVELOPMENT CORP., and SWN PRODUCTION COMPANY, LLC, | |
| Defendants. | |

**MEMORANDUM OPINION**

**JULY 6, 2023**

This case—a property dispute about highly valuable subsurface mineral estates here in Pennsylvania—is but one of several lawsuits involving many of the same parties and legal issues. Given the parallel actions, which are significantly more advanced than the instant case, the parties agree that a stay is appropriate, but they disagree on how broad that stay should be. The Defendants want to stay the case in full; the Plaintiffs want only a partial stay. Because this Court is unpersuaded by the Plaintiffs' argument that the case can be neatly bifurcated to isolate the properties affected by the legal issues common to the instant and parallel actions, the Court deems the proposed partial stay unworkable and inefficient. The Defendants' motion to stay the case in full is therefore granted.

I.   **BACKGROUND**

The instant case concerns the ownership of subsurface mineral rights on 44 tracts of land in Lycoming and Sullivan Counties that were owned by Thomas E. Proctor in the late 19th century and that have become increasingly valuable in recent years due to oil and gas development. The Defendants, corporate entities involved in the energy business, claim ownership of the subsurface estate based on various tax sales and other conveyances that followed Proctor's sale of the properties in 1894.[1] The Plaintiffs, trustees for The Thomas E. Proctor Heirs Trust (collectively, the "Trust"), assert that the 1894 sale and subsequent tax sales and conveyances concerned only the surface estate; they did not divest the Trust of ownership over the subsurface estate.[2] Through this action, the Trust asks the Court to certify its claim to the subsurface estates for the 44 tracts.[3]

In October 2015, Defendants EQT AMD LLC and EQT ARO LLC (collectively, "EQT") moved to dismiss the Trust's claims as to a subset of the 44 tracts at issue in the case—the thirteen so-called "Unassessed Properties."[4] Specifically, EQT argues that the Trust's proffered basis for ownership of the

---

[1]   *See* Doc. 22 (EQT's MTD Br.) at 1.
[2]   *See* Doc. 29 (Trust's MTD Opp.) at 1–2.
[3]   *See* Doc. 1 (Compl.).
[4]   *See* Doc. 19 (EQT's MTD); Doc. 22 (EQT's MTD Br.) at 6–7 (defining the "Unassessed Properties").

subsurface estates for the Unassessed Properties is (a) barred by the doctrine of collateral estoppel, and (b) contrary to Pennsylvania law.[5]

The instant action, however, does not exist in isolation. Indeed, there are multiple parallel actions winding their way through the federal and Pennsylvania courts that involve the Trust's claims to the subsurface rights of various other tracts of land in Pennsylvania—in particular, a case before the United States Court of Appeals for the Third Circuit,[6] and another before the Commonwealth Court of Pennsylvania.[7]

Because those parallel actions involve some of the same questions of Pennsylvania state law at issue here, this Court has effectively imposed an informal stay pending some guidance from either the Third Circuit or the Supreme Court of Pennsylvania.[8] But as this Court acknowledged in its Order of May 18, 2023, that approach has become untenable.[9] EQT's motion to dismiss has been ripe for nearly a year-and-a-half, but it remains unaddressed—languishing without any ruling or formal guidance from this Court.

---

[5]  *See* Doc. 22 (EQT's MTD Br.) at 10–23.
[6]  *See Commonwealth of Pennsylvania v. Thomas E. Proctor Heirs Trust*, No. 22-8007 (3d Cir.).
[7]  *See Pennsylvania Game Commission v. Thomas E. Proctor Heirs Trust and the Margaret O.F. Proctor Trust*, No. 493 MD 2017 (Pa. Cmwlth).
[8]  *See* Doc. 49 (May 18, 2023, Stay Briefing Order) at 1.
[9]  *Id*.

To remedy the situation, the Court directed EQT to file a formal motion to stay proceedings,[10] and EQT complied.[11] That motion has been fully briefed and is now ripe for disposition.[12]

## II.  LAW

It is well established that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket."[13] And to that end, the Third Circuit affords district courts broad latitude on such case-management decisions.[14]

When assessing the propriety of staying proceedings, a court should consider "whether a stay will simplify issues and promote judicial economy."[15] Further, the court should weigh other practical considerations, such as the length of the requested stay, the "hardship or inequity" that the moving party would face if the litigation proceeded unabated, and the injury a stay would inflict upon the non-movant.[16]

---

[10]  *Id*. at 3.
[11]  Doc. 50 (EQT Motion to Stay).
[12]  *See* Doc. 51 (EQT Stay Br.); Doc. 52 (Trust Stay Opp.); Doc. 56 (EQT Stay Reply).
[13]  *Commonwealth Insurance Co. v. Underwriters, Inc.*, 846 F.2d 196, 199 (3d Cir. 1988) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)).
[14]  *See In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 817 (3d Cir. 1982) ("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court. We will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant.") (citation and quotation marks omitted).
[15]  *Structural Group, Inc. v. Liberty Mutual Insurance Co.*, 2008 WL 4616843, at *5 (M.D. Pa. Oct. 16, 2008) (Kane, J.) (citing *Landis*, 299 U.S. at 254–55).
[16]  *Id*.

### III. ANALYSIS

As noted, the question before the Court is not *whether* to stay proceedings in this case—indeed, all parties acknowledge that the state law issues present in the parallel actions will materially affect the disposition of this matter and, as such, a stay of some fashion is appropriate. The Court must instead simply determine how broad the stay should be.

According to EQT, the case should be "stayed in its entirety pending certification to the Pennsylvania Supreme Court and resolution of the Third Circuit appeal."[17] Conversely, the Trust argues for a narrower stay, asserting that although "the facts and legal issues" concerning the thirteen Unassessed Properties align with those in the case currently on appeal with the Third Circuit, the remaining 31 properties "raise legal issues that are not addressed" in the Third Circuit appeal.[18]

To resolve the dispute, the Court must first determine the extent of the overlap between the instant suit and the parallel state and federal actions. That determination will allow the Court to then assess the various practical considerations relevant to EQT's motion to stay proceedings.

#### A.    The Parallel Actions

As EQT sees it, there are two separate questions of state law at issue in the parallel actions that "apply to all (or substantially all) of the tracts in this

---

[17]   Doc. 51 (EQT's Stay Br.) at 2 (removing capitalization of defined term).
[18]   Doc. 52 (Trust's Stay Opp.) at 2.

litigation": (1) the two-year limitation period in the Act of 1815; and (2) the duty to pay tax on unseated land in Pennsylvania.[19] The Trust disagrees, arguing that its claim to title for the thirteen Unassessed Properties at issue in EQT's motion to dismiss rests on grounds distinct from, and independent of, its claims to the remaining 31 properties.[20]

The Court begins its analysis with a review of the relevant proceedings in the parallel actions and then turns to the parties' arguments about the extent to which the instant action and parallel actions present the same legal questions.

### 1. Third Circuit Appeal

As both parties acknowledge, the parallel action of greatest significance to EQT's motion to stay proceedings is the federal action currently before the Third Circuit.[21] That case was filed here in the United States District Court for the Middle District (assigned to my colleague, the Honorable Christopher C. Conner) in August 2012.[22] There, the Pennsylvania Game Commission sued the Trust, seeking to affirm its ownership of both the surface and subsurface rights of numerous tracts of land in northeastern Pennsylvania.[23] The Trust, believing it holds superior title to the subsurface estates underlying those tracts, filed a

---

[19]   Doc. 51 (EQT's Stay Br.) at 2–6.
[20]   Doc. 52 (Trust's Stay Opp.) at 5–9.
[21]   *See* Doc. 51 (EQT's Stay Br.) at 1–6 (discussing the instant case in relation to the Third Circuit appeal); Doc. 52 (Trust's Stay Opp.) at 2–3 (same).
[22]   *Pennsylvania Game Commission v. Thomas E. Proctor Heirs Trust*, 455 F. Supp. 3d 127, 130 (M.D. Pa. 2020) (Conner, J.).
[23]   *Id*.

counterclaim to quiet title.[24] The parties then engaged in a protracted, complex legal dispute, which culminated in cross motions for summary judgment on a single, bellwether tract in Bradford County, Pennsylvania.[25]

In its motion for summary judgment, the Trust premised its claim to the subsurface estate on, among other things, the legality and scope of a 1908 tax sale, in which the Central Pennsylvania Lumber Company (the Game Commission's predecessor in title as to the bellwether tract) claimed ownership of the tracts' surface and subsurface estates.[26] Relevant here, the Trust argued that the 1908 tax sale constituted a violation of the Trust's due process rights and, regardless, did not lawfully transfer the properties' subsurface estates.[27] The latter argument includes within it several predicate issues, including whether the Lumber Company had a legal duty to pay taxes on the unassessed properties at issue, and whether the purchaser at the 1908 tax sale was an agent of the Lumber Company.[28]

---

[24]  *Id*. at 130–31.
[25]  *Id*.
[26]  *Id*. at 131.
[27]  According to the Trust, the Lumber Company "breached its duty to pay 1907 taxes on its land, caused the 1908 tax sale, and then used [its agent] to attempt to improve its title by purchasing the warrant at that tax sale with the subsurface purportedly enjoined"—a practice at odds with the so-called *Powell* rule that prohibits a landowner from "acquir[ing] a better title" by purchasing "at a tax sale caused by his failure to pay taxes which he owed the state." *Pennsylvania Game Commission*, 455 F. Supp. 3d at 145 (citing *Powell v. Lantzy*, 34 A. 450, 451 (Pa. 1896)). Therefore, the Trust asserts, the 1908 tax sale operated as only as redemption of the Lumber Company's surface interest; it did not lawfully transfer ownership of the subsurface estate. *Id.*
[28]  *Pennsylvania Game Commission*, 455 F. Supp. 3d at 145–51.

7

For its part, the Game Commission asserted that the Trust's due process claim was barred by the Act of 1815 statute of limitations—which required individuals opposing a tax sale to initiate their challenge within two years of the sale—and that the 1908 tax sale lawfully transferred the properties' subsurface estates.[29] The Game Commission argued against the existence of a legal duty to pay taxes on unseated land and also denied that the purchaser in 1908 was the Lumber Company's agent.[30]

In his April 2020 ruling, Judge Conner denied the summary judgment motions because there were questions of fact that required resolution by a jury.[31] Relevant here, Judge Conner rejected the Game Commission's argument that the Trust's due process claim was barred by the two-year statute of limitations in the Act of 1815.[32] And although he agreed with the Trust that the Lumber Company "owed a legal duty to pay taxes on its unseated surface estate" and, therefore, "could not use an agent to acquire a better title . . . at a tax sale prompted by its own default," Judge Conner concluded that whether the 1908 purchaser was, in fact, acting as the Lumber Company's agent was "a question of fact, not a question of law."[33]

---

[29] *Id.* at 149, 152.
[30] *Id.* at 149–51.
[31] *Id.* at 151.
[32] *Id.* at 152.
[33] *Id.* at 147, 151.

Following his summary judgment ruling, Judge Conner presided over a bench trial on April 27, 2021.[34] And based on the evidence presented at trial, he concluded that the purchaser at the 1908 tax sale was indeed an agent of the Lumber Company.[35] As such, Judge Conner held that the 1908 purchase constituted a redemption of the Game Commission's surface estate; the sale did not effectuate a transfer of the subsurface rights.[36]

But, importantly, in his summary judgment ruling preceding the trial, Judge Conner acknowledged that the duty question was "purely a matter of state law" for which there was "no case on point," and that lacking controlling precedent, his ruling constituted simply his best effort "to predict how Pennsylvania courts would rule if confronted with [the] issue."[37] Accordingly, after affirming the Trust's interest in the subsurface estate of the bellwether tract,[38] Judge Conner certified for interlocutory appeal the following question:

> Under Pennsylvania law in effect at all times relevant to the instant quiet title dispute, did the owner of an "unseated" surface estate have a legal duty to pay taxes assessed on said surface estate, thereby preventing the owner—or the owner's agent—from acquiring better title to the land at a tax sale induced by the unseated owner's default?

---

[34] *See Pennsylvania Game Commission v. Thomas E. Proctor Heirs Trust et al.*, No. 12-CV-01567 (M.D. Pa.) (Conner, J.), Doc. 218 (Apr. 27, 2021, Trial Tr.).
[35] *See id.* at Doc. 222 (Dec. 3, 2021, Bench Trial Ruling).
[36] *Id.*
[37] *Pennsylvania Game Commission*, 455 F. Supp. 3d at 147.
[38] *See Pennsylvania Game Commission*, No. 12-CV-01567, Doc. 222.

In its Petition for Permission to Appeal, the Game Commission identified two questions it deemed "fairly included" within Judge Conner's order certifying the interlocutory appeal:

1. Whether the owner of the surface or the separate owner of the subsurface had any duty at all to pay the taxes owed or whether, by operation of Pennsylvania law, the taxes were chargeable to the land itself, *i.e. in rem*?

2. Whether the Trust's failure to challenge the taxing authority's assessment and tax sale within two years of that sale, in 1908, precludes the Trust from challenging it more than a century later?[39]

And on March 24, 2022, the Third Circuit granted the Game Commission permission for leave to appeal.[40]

The Game Commission and the Trust briefed the matter, as did EQT (the Third Circuit granted EQT *amicus curiae* status to participate in the briefing and oral argument).[41] Then, on March 28, 2023, the Third Circuit ordered the appeal held *curia advisari vult* "pending resolution in the Pennsylvania courts" of the separate related action before the Commonwealth Court of Pennsylvania.[42] The Game Commission and the Trust responded with a joint motion asking the Third Circuit to either rule on the matter before it or certify the questions of

---

[39] Doc. 51-2, Ex. A (Game Commission's Petition for Permission to Appeal) at 5.
[40] *See* Doc. 51-3, Ex. B (Mar. 24, 2022, Third Circuit Order Granting Permission for Leave to Appeal).
[41] *See* Doc. 51-6, Ex. E (Gaming Commission's Third Circuit Reply); Doc. 51-7, Ex. F (EQT's Third Circuit *Amicus* Brief); Doc. 51-8, Ex. G (Trust's Third Circuit Appellee Br.).
[42] Doc. 51-10, Ex. I (Mar. 28, 2023, Third Circuit Order Holding Matter C.A.V.).

Pennsylvania state law to the Pennsylvania Supreme Court.[43] The Third Circuit opted for the latter,[44] and, as such, the appeal is currently held in abeyance pending guidance from the Pennsylvania Supreme Court.

### 2. Overlap With the Instant Suit

As that account of the parallel federal action makes plain, there is substantial overlap between that case and the instant suit.

First, EQT notes that the Trust has alleged that "all 44 of the unseated tracts at issue in this litigation went through at least one (and most through multiple) tax sales," and as "[t]his lawsuit comes long after expiration of the Act of 1815's two-year limitation period for [the Trust] and/or its predecessors to have challenged these tax sales," the two-year limitation "impacts all 44 tracts."[45] In response, the Trust argues that because its "claims to the 31 properties are not challenges to the tax sales," the two-year limitation argument has "no application" to the 31 properties.[46]

But as the Court sees it, the Trust is attempting to litigate the merits of EQT's statute of limitations defense.[47] That's not relevant at this juncture. The

---

[43] Doc. 51-11, Ex. J (Apr. 11, 2023, Joint Mot. with Third Circuit to Vacate C.A.V. Order and Certify Question).
[44] Doc. 51-12, Ex. K (May 1, 2023, Third Circuit Order Lifting Stay and Certifying Question).
[45] Doc. 51 (EQT's Stay Br.) at 3–4 (citing Doc. 1 (Compl.) ¶¶ 51–53, 64, 68, 71, 107).
[46] Doc. 52 (Trust's Stay Opp.) at 10.
[47] See id. at 10 (arguing that "EQT has not explained how the limitations would apply to the [ten] Separately Assessed Properties or the [seventeen] Cotenant Properties"), 11 (arguing that the Act of 1815 "does not—and, by necessity, could not—prevent a court from determining what in fact was assessed and sold").

Court is not now tasked with ruling on the statute of limitations defense; rather, the Court must simply ask whether that defense is also at issue in Third Circuit appeal. It is.

The applicability of the two-year limitations period was presented as an issue for appellate review that the Third Circuit accepted,[48] with the Game Commission (as petitioner) and EQT (as *amici curiae*) arguing that the two-year limitation period bars the Trust's tax sale challenge,[49] and the Trust (as respondent) arguing that the statutory time bar does not apply.[50] The Trust raises that same argument in its opposition to EQT's pending motion to dismiss in this case.[51] Accordingly, the Court agrees with EQT that the application of the two-year limitations period in the Act of 1815 is an issue common to the instant case and the parallel action presently before the Third Circuit.

Second, EQT notes that the Trust "alleges within its Complaint that '40 of 44 tracts' went through a tax sale between 1908 and 1928 and were, owing to a

---

[48] *See* Doc. 51-2, Ex. A (Game Commission's Petition for Permission to Appeal); Doc. 51-3, Ex. B (Mar. 24, 2022, Third Circuit Order Granting Permission for Leave to Appeal).

[49] *See* Doc. 51-6, Ex. E (Gaming Commission's Third Circuit Reply) at 4–5 ("A subsurface owner, such as Proctor, still had two years after the sale to challenge that irregularity. But, if he sat on his rights for two years, as the Proctor Trust did here, that right was extinguished by the statute of limitations."); Doc. 51-7, Ex. F (EQT's Third Circuit Amicus Brief) at 4–5 (asserting that "Pennsylvania's statutory time bar applicable to tax sale challenges is wholly dispositive of this suit").

[50] *See* Doc. 51-8, Ex. G (Trust's Third Circuit Appellee Br.) at 48–53 (Section III: "The Two-Year Limitation Period in the Act of 1815 Does Not Apply to This Case").

[51] Doc. 29 (Trust's MTD Opp.) at 8–10 (arguing that "the two-year limitation period does not apply to [the Trust's] claims" because the Trust "does not challenge the regularity of the assessments, but instead contends that the tax sales did not have the effect that [the] Defendants retroactively ascribe to them").

purported duty of the unseated landowner to pay taxes, 'redeemed' by purported [Lumber Company] agents,"[52] and that the "purported 'duty' theory is under scrutiny in the Third Circuit appeal."[53] For its part, the Trust disputes neither the relevance of the duty inquiry to the instant action nor its centrality to the parallel action on appeal before the Third Circuit. Instead, the Trust points to a motion for partial summary judgment that it filed in the instant action (which the Court denied as premature) concerning the 31 properties not implicated in EQT's motion to dismiss.[54] The Trust emphasizes that "in [its] summary judgment brief, there is no reference to any duty to pay the tax on unseated lands" (i.e., "the certified question on interlocutory appeal to the Third Circuit"); instead, the Trust "has forged a separate path for resolution of the 31 properties," which relates to distinct mineral rights tax sales between 1936 and 1938 as well as a subsequent statutory redemption in 1950.[55]

But the Trust's argument falls flat for several reasons. For one thing, the Court is not convinced that the Trust's proposed alternative "path for resolution" for the 31 properties qualifies as a "threshold issue" that would render the statute of limitations and duty arguments superfluous.[56] As EQT argues in its reply, "[i]f

---

[52] Doc. 51 (EQT's Stay Br.) at 6 (citing Doc. 1 (Compl.) ¶¶ 52–61).
[53] *Id.* (citing Doc. 51-2, Ex. A (Game Commission's Petition for Permission to Appeal); Doc. 51-3, Ex. B (Mar. 24, 2022, Third Circuit Order Granting Permission for Leave to Appeal)).
[54] *See* Doc. 52 (Trust's Stay Opp.) at 6.
[55] *Id.* at 5–7.
[56] *Id.*

13

the Third Circuit appeal confirms that the Proctor mineral reservations were extinguished as a result of [the] earlier tax tales (because [the Lumber Company] had no duty to pay tax on unseated lands and because [the Trust's] predecessors failed to challenge the tax sales within the Act of 1815's two-year limitations period), it will be unnecessary for this Court to reach the 'threshold' impact of purported 1950 redemptions involving all of those tracts."[57]

For another, even were it appropriate to consider the 1950s redemption argument prior to addressing the statute of limitations and duty issues presently before the Third Circuit, that does not negate the applicability of those latter issues to the instant case. Put differently, the Trust's argument presupposes that its summary judgment motion, once considered on the merits, will prove successful. If the Court first considered the Trust's "separate path for resolution" and found it unavailing, it would presumably then have to turn to the statute of limitations and duty issues. The overlap between the instant action and the parallel actions would remain, but the Court would have to deal with the added complexity of reuniting a bifurcated case—an unappealing option, to say the least.

---

[57] Doc. 56 (EQT's Stay Reply) at 2. To be clear, the Court is not adopting EQT's framing of those issues; the Court simply notes the disagreement and finds that it cannot, at this juncture, definitively rule that the Trust's "separate path for resolution" renders irrelevant the undeniable overlap between the parallel cases.

**B.     The Motion to Stay**

Recognizing the substantial overlap between the legal questions at issue in the parallel actions and the instant case, the Court now turns to the practical considerations that drive any assessment of whether to stay proceedings: (1) whether a stay will simplify the issues and promote judicial economy; (2) the anticipated length of the stay; and (3) any harm to the respective parties by granting or denying the motion to stay.[58] According to EQT, the practical considerations "weigh heavily in favor of a stay in this action in its entirety pending resolution of the Third Circuit appeal."[59] The Court agrees.

First, EQT argues that because the motion to dismiss pending before this Court—as well as this action generally—will be "significantly impacted by the outcome of the Third Circuit appeal," staying the instant case until the Third Circuit can rule will avert the possibility of inconsistent rulings, thereby avoiding an otherwise unnecessary appeal and saving judicial resources.[60] The Trust offers no counter to this point, and the Court finds none.[61]

Second, based on its review of cases where the Supreme Court of Pennsylvania accepted certified questions from the Third Circuit, EQT found that "the average time from granting the petition until resolution of the certified

---

[58]   See *Structural Group, Inc.*, 2008 WL 4616843 at *5.
[59]   Doc. 51 (EQT's Stay Br.) at 10.
[60]   *Id*. at 13.
[61]   See Doc. 52 (Trust's Stay Opp.).

15

questions was approximately twelve months."[62] Further, EQT asserts that "courts within this Circuit regularly exercise their authority to stay matters pending resolutions of similar actions."[63] On this, the Trust again offers no response.[64]

And third, EQT argues that a stay pending resolution of the questions of state law certified by the Third Circuit to the Pennsylvania Supreme Court "will avoid the unnecessary hardship and expense to the parties . . . of litigating issues that may ultimately become moot."[65] Conversely, EQT asserts, given that this case has as its genesis a mineral reservation from 1894, the limited delay caused by a stay will not prejudice the Trust.[66] The Court finds both points persuasive. As such, all three considerations the Court must assess when analyzing a motion to stay support EQT's request for a global stay pending resolution of the Third Circuit appeal.

## IV. CONCLUSION

The Trust asks the Court to effectively bifurcate the instant action—staying the matter as to the thirteen Unassessed Properties while allowing the case to proceed as to the remaining 31 properties. The Court, however, has little appetite

---

[62] Doc. 51 (EQT's Stay Br.) at 10 (citing Doc. 51-13 (Pa. Supreme Court Docket Sheets)).
[63] *Id*. at 11 (citing *Cliffstar Corp. v. Ajinomoto Co., Inc.*, No. 09-3867, 2010 WL 11710671, at *2 (E.D. Pa. Nov. 10, 2010); *Democracy Rising PA v. Celluci*, No. 07-CV-0860, 2007 WL 2031706 (M.D. Pa. July 12, 2007); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 99-2926, 2004 WL 1615307, at *7 (E.D. Pa. July 26, 2004); *Chartener v. Provident Mutual Life Insurance Co.*, No. 02-8045, 2003 WL 22518526, at *4 (E.D. Pa. Oct. 22, 2003)).
[64] *See* Doc. 52 (Trust's Stay Opp.).
[65] Doc. 51 (EQT's Stay Br.) at 12.
[66] *Id*. at 10–12.

for further complicating this already complex matter. Moreover, the Court agrees with EQT that the parallel actions presently before the Third Circuit and Commonwealth Court involve many of the same questions of state law at issue here, and, therefore, the relevant practical considerations militate in favor of a global stay. Accordingly, EQT's motion to stay proceedings pending resolution of the Third Circuit appeal is granted.

      An appropriate Order follows.

                                        BY THE COURT:

                                        *s/ Matthew W. Brann*
                                        Matthew W. Brann
                                        Chief United States District Judge