# Exhibit B

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1587
_____

COMMONWEALTH OF PENNSYLVANIA,
PENNSYLVANIA GAME COMMISSION,
      Appellant

v.

THOMAS E. PROCTOR HEIRS TRUST, under Declaration of Trust dated
October 28, 1980, which is recorded in Sullivan County in Book 1106,
at page 879, its successors and assigns


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 12-cv-1567)
District Judge: Honorable Christopher C. Conner


Argued
January 11, 2023

Before: JORDAN, PHIPPS and ROTH, *Circuit Judges*


Michael J. Scarinci   [ARGUED]
Office of Attorney General of Pennsylvania
Strawberry Square 15th Floor
Harrisburg, PA  17120
      *Counsel for Appellant*

Christopher R. Healy
Troutman Pepper
Two Logan Square
18th and Arch Streets
Philadelphia, PA   19103

Laura A. Lange   [ARGUED]
1670 Sturbridge Drive
Sewickley, PA  15143

Justin G. Weber
Troutman Pepper
100 Market Street – Ste. 200
P. O. Box 1181
Harrisburg, PA  17108
    *Counsel for Appellee*

Richard L. Armezzani
Daniel T. Brier
John B. Dempsey   [ARGUED]
Myers Brier & Kelly
425 Biden Street – Ste. 200
Scranton, PA  18503
    *Counsel for Amicus Appellants*
    *EQT AMD LLC and EQT ARO LLC*

Robert J. Burnett
Houston Harbaugh
401 Liberty Avenue
22nd Floor, Three Gateway Center
Pittsburgh, PA  15222
    *Counsel for Amicus Appellant*
    *International Development Corp.*

_____

PETITION FOR CERTIFICATION OF QUESTION OF STATE LAW

To the Honorable Justices of the Supreme Court of Pennsylvania:

This matter came before the United States Court of Appeals for the Third Circuit on appeal from an order entered by the United States District Court for the Middle District of Pennsylvania. Having reviewed the briefs and the record in this case, and having heard oral argument, the panel (Jordan, Phipps, and Roth, JJ.), prompted by a motion filed jointly by the parties, has voted to seek guidance from the Supreme Court of

Pennsylvania by certifying a question pursuant to our Local Appellate Rule ("L.A.R.") Misc. 110.1.[1]

We respectfully request that the Supreme Court of Pennsylvania accept certification, pursuant to Pennsylvania Rule of Appellate Procedure 3341, and resolve the following: whether, on the record provided here, a 1908 tax sale of an unseated parcel of land, induced by the surface owner's failure to pay taxes on the estate, and made to an agent of the defaulting surface owner, constitutes a title wash, thereby divesting the subsurface owner of his interest in the estate.[2]

That certified question, which we believe raises an important and unsettled issue of Pennsylvania law, lies at the intersection of two decisions addressing Pennsylvania's title wash doctrine: *Powell v. Lantzy*, 34 A. 450 (Pa. 1896), and *Herder Spring Hunting Club v. Keller*, 143 A.3d 358 (Pa. 2016). Resolution of this bellwether case will determine the subsurface rights to thousands of acres of land that rest on the Marcellus Shale. *See Pennsylvania Game Comm'n v. Thomas E. Proctor Heirs Tr.*, 455 F. Supp. 3d

---

[1] L.A.R. Misc. 110.1, Certification of Questions of State Law, provides as follows:
> When the procedures of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte or on motion of a party, may certify such a question to the state court in accordance with the procedures of that court, and will stay the case in this court to await the state court's decision whether to accept the question certified. The certification will be made after the briefs are filed in this court. A motion for certification must be included in the moving party's brief.

[2] *See* 210 Pa. Code Rule 3341(b)(3) ("A petition for certification … shall contain … [a] statement of the question or questions of Pennsylvania law to be determined[.]").

3

127, 130 (M.D. Pa. 2020) ("Experts conservatively value [the natural gas from the Marcellus Shale] in the hundreds of billions of dollars."). A decision as to this certified issue will not require any fact-finding, *see Pennsylvania v. Thomas E. Proctor Heirs Tr.*, 2021 WL 5759030, at *10 (M.D. Pa. Dec. 3, 2021) (issuing findings of fact), and it will have precedential value for other similarly situated parcels, thereby facilitating the prompt resolution of many of the Marcellus Shale lawsuits filed in Pennsylvania.[3]

For these reasons, we respectfully request that this Court accept certification.

## I. BACKGROUND[4]

This action was brought by the Pennsylvania Game Commission in 2012 against the Thomas E. Proctor Heirs Trust ("Proctor Trust") and the Margaret O.F. Proctor Trust,[5] seeking to quiet title to the subsurface rights of approximately 2,500 acres in Sullivan County, Pennsylvania.[6] The Proctor Trust counterclaimed for title to the same

---

[3] *See* 210 Pa. Code Rule 3341(b)(4) ("A petition for certification … shall contain … [a] statement of the particular reasons why the Supreme Court should accept certification[.]").

[4] This background section is a "brief statement" regarding "the material facts of the case[,]" and the "nature and stage of the proceedings in the petitioning court[.]" 210 Pa. Code Rule 3341(b)(1)-(2).

[5] At the commencement of this action, the two trusts jointly held interests in the oil, gas, and mineral rights of Thomas E. Proctor, but between December 2020 and March 2021, the Margaret O.F. Proctor Trust transferred its interests to the Thomas E. Proctor Heirs Trust. In an unopposed motion filed in April 2021, the Margaret O.F. Proctor Trust moved to voluntarily dismiss itself from this action. The District Court granted that motion.

[6] On appeal, the Pennsylvania Game Commission is the Appellant, and the Proctor Trust is the Appellee. *See* 210 Pa. Code Rule 3341(b)(5) ("A petition for certification … shall contain … [a] recommendation about which party should be designated Appellant and which Appellee in subsequent pleadings filed with the Supreme Court.")

property and for the subsurface rights to other land in Sullivan and Bradford Counties. Following discovery, the parties agreed to file cross motions for summary judgment with respect to a representative portion of the land known as the Haines Warrant.

### A. Factual Background

At the center of the parties' dispute are several real estate transactions stretching back more than a century. In 1894, Thomas E. Proctor and Jonathan A. Hill owned the Haines Warrant in fee simple. That year, they conveyed the Haines Warrant (consisting of approximately 407 acres), along with other tracts, to the Union Tanning Company, reserving to themselves the subsurface estate, i.e., "all the minerals, coal, oil, gas or petroleum found now or hereafter[.]" (J.A. at 372 (Proctor Subsurface Reservation).) Proctor died two months later. Pursuant to his will, his subsurface rights in the Haines Warrant were devised to his heirs in trust.

Following Proctor and Hill's sale of their interest to Union Tanning, tax assessment records identified Union Tanning as the owner of the Haines Warrant, describing the warrant as "unseated lands ass[ess]ed to the Union Tanning Company." (J.A. at 28.) From 1894 through 1902, Union Tanning paid taxes on the warrant. In May 1903, Union Tanning conveyed the Haines Warrant to its affiliate, Central Pennsylvania Lumber Company ("CPLC"), subject to Proctor and Hill's subsurface reservation. From 1903 through 1906, CPLC paid the taxes on the warrant.

In 1907, unlike in previous years, CPLC did not pay the taxes assessed on the Haines Warrant. Consequently, after publishing notices of sale in Pennsylvania newspapers, Bradford County sold the warrant at a public sale on June 8, 1908. The tax

5

sale purchaser of the Haines Warrant was Calvin McCauley, who, at that time, was the Treasurer of CPLC, the defaulting surface owner. For the next two years, CLPC paid taxes on the warrant, while McCauley ostensibly held title to it. In 1910, McCauley sold the Haines Warrant back to CPLC for $1.

A decade later, in 1920, CPLC sold the Haines Warrant to the Game Commission. Before the sale, the "Examiner of Titles to the Board of Game Commissioners" noted that the "Contract for Sale" between CPLC and the Game Commission would be "made subject to" a subsurface reservation in favor of "Thomas E. Proctor and … [his] heirs and assigns[.]" (J.A. at 345, 348). Accordingly, the deed stated that the "conveyance" to the Game Commission "is made subject to all the minerals, coal, oil, gas or petroleum found now or hereafter on, or under the surface or any or all of the lands … as fully as said minerals and mineral rights were excepted and reserved in deed … from Thomas E. Proctor et al." (J.A. at 392–93.)

### B. The District Court's Decision

After the parties to the present suit filed cross motions for summary judgment, the District Court initially granted summary judgment for the Game Commission on the issue of subsurface ownership of the bellwether Haines warrant. In its first summary judgment opinion, the Court held that the county commissioners taxed and assessed the Haines Warrant as a whole, and that, as a result, they sold the property as a whole at the 1908 tax sale. The District Court therefore held that the interests in the surface and subsurface estates merged. In other words, the tax sale "washed" the title so that it represented a fee simple property interest.

Upon the Proctor Trust's motion for reconsideration, however, the District Court vacated its order and denied summary judgment. *Pa. Game Comm'n v. Thomas E. Proctor Heirs Trust*, 455 F. Supp. 3d 127, 130 n.1, 154 (M.D. Pa. 2020). It determined that there were material disputes of fact as to two issues: whether the scope of the 1907 assessment leading to the 1908 tax sale of the Haines Warrant included the subsurface estate, and whether the tax sale purchaser, Calvin McCauley, was acting as an agent of the surface owner, CPLC, and conspired to obtain full and clear title to the land on behalf of CPLC through a default tax sale. *Id.* at 154. The District Court then held a one-day bench trial, during which it examined over 120 trial exhibits, including assessment records, CPLC's corporate property books, newspaper articles, declarations from three custodians of county and state historical records, as well as testimony from three witnesses, including a title examiner.

Following trial, the District Court entered judgment in favor of the Proctor Trust. The Court determined that "McCauley's status as an agent of CPLC, as well as CPLC's breach of its duty to pay 1907 taxes on the [Haines Warrant], rendered McCauley's 1908 purchase a mere redemption." (J.A. at 38.) In other words, the Court decided that Pennsylvania law does not allow a defaulting surface owner to contrive a tax sale to acquire, via its agent, the subsurface ownership rights of the estate.[7] The District Court,

---

[7] The District Court also held for the Trust on a second, independent ground. Based on its finding that CPLC reported its surface interest, the District Court concluded "that the commissioners of Bradford County were 'otherwise directed' to assess the surface and subsurface estates of the [Haines Warrant] separately." (J.A. at 36.) That

7

citing *Powell v. Lantzy*, 34 A. 450, 451 (Pa. 1896), relied on an equitable principle in Pennsylvania law that "one cannot, by a purchase at a tax sale caused by his failure to pay taxes which he owed the state, or which he was otherwise legally or morally bound to pay, acquire a better title, or a title adverse to that of other parties in interest." (J.A. at 40.)

Pursuant to 28 U.S.C. § 1292(b), the District Court certified a single question for interlocutory appeal to our Court:

> Under Pennsylvania law in effect at all times relevant to the instant quiet title dispute, did the owner of an unseated surface estate have a legal duty to pay taxes assessed on said surface estate, thereby preventing the owner—or the owner's agent—from acquiring better title to the land at a tax sale induced by the unseated surface owner's default? [8]

(J.A. at 3.)

---

fact, the District Court held, "forecloses the argument that the 1908 tax sale at issue must have included the whole warrant." (J.A. at 36.)

[8] We have taken the liberty of reformulating the District Court's interlocutory certification in this petition for certification of a question of state law. *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) ("As the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court. The court of appeals may not reach beyond the certified order to address other orders made in the case. But the appellate court may address any issue fairly included within the certified order because 'it is the *order* that is appealable, and not the controlling question identified by the district court.'" (citing *United States v. Stanley*, 483 U.S. 669, 677 (1987))).

8

II.  DISCUSSION[9]

A. Powell v. Lantzy

Resolving the present dispute requires interpreting the equitable principle articulated in *Powell v. Lantzy*, 34 A. 450 (Pa. 1896), in light of the Supreme Court of Pennsylvania's much more recent opinion in *Herder Spring Hunting Club v. Keller*, 143 A.3d 358 (Pa. 2016).

*Powell* involved a dispute over an unseated parcel of land that county commissioners assessed and taxed in fee simple in 1882 and 1883. *Powell*, 34 A. at 451. Without having paid those taxes, the owner of the property sold the surface rights in 1883, reserving for himself the coal and mineral rights. *Id.* In 1884, a tax sale purported to encompass the entire property based upon the 1882 and 1883 pre-division assessment and taxation. *Id.* At the 1884 tax sale, the owner of the surface estate purchased the property in fee simple sale, thus also gaining the subsurface rights. *Id.*

In a section of the opinion addressing whether the surface owner could improve his title by way of a tax sale, the Pennsylvania Supreme Court recited the following

---

[9] As Amici Curiae, subsidiaries of the natural gas company EQT Corporation, note in their brief, resolution of this certified question will likely have implications for other land disputes in the Marcellus Shale Region in the Commonwealth of Pennsylvania. For instance, Amici point to the ongoing litigation in *Kendall. v. EQT AMD LLC*, No. 4:21-cv-1491, 2021 WL 5866597 (M.D. Pa. Dec. 10, 2021), in which the Proctor Trust "claims title to the subsurface estate of 44 tracts of land accounting for more than 17,000 acres owned by EQT and codefendants[.]" (Amici Curiae Br. at 2.) Additionally, currently pending in the Commonwealth Court of Pennsylvania is *Commonwealth v. Thomas E. Proctor Heirs Trust*, No. 493 M.D. 2017, 2020 WL 256984 (Pa. Cmwlth. Ct. Feb. 16, 2020), which raises substantially similar issues to the ones in this case. On January 27, 2023, to avoid a potentially unnecessary trial, the trial judge stayed that case pending a decision in this case.

9

equitable principle, the so-called *Powell* rule relied upon by the District Court and the Proctor Trust in the instant case:

> The rule that one cannot, by a purchase at a tax sale caused by his failure to pay taxes which he owed the state, or which he was otherwise legally or morally bound to pay, acquire a better title, or a title adverse to that of other parties in interest, rests upon the principle that one cannot profit by his own wrong, and build up or acquire a title founded upon his own neglect of duty.

*Id.*[10]

The Court clarified that, "[t]he rule … should be restricted to cases where it was the duty of the purchaser to pay the tax." *Id.* (citations omitted). The Court also stated that the equitable rule would apply if the tax sale purchaser had a contractual or fiduciary relationship with a person who had a duty to pay taxes on the property. *Id*.

An issue in this case is whether a subsurface estate owner *ever* has a "duty" to pay taxes on the subsurface estate. Under Pennsylvania's pre-1947 tax regime for property, the land itself, rather than the owner of it, was liable for taxes. *See Herder Spring*, 143 A.3d at 364, 379 (the land "is debtor for the public charge") (citation omitted); *Bannard v. N.Y. State Natural Gas Corp.*, 293 A.2d 41, 49 (Pa. 1972) ("the land, not the owner, is looked to for payment of delinquent taxes"); *Proctor v. Sagamore Big Game Club*, 166 F. Supp. 465, 475 (W.D. Pa. 1958) ("Unseated lands are alone liable for taxes assessed thereon.").

---

[10] Although the Pennsylvania Supreme Court articulated the equitable rule in *Powell*, it determined that the equitable rule did not apply in that case. *Powell*, 34 A. at 451-52.

The parties agree that Pennsylvania's purpose in imposing tax liability on the unseated land – as opposed to its owner – was due to the practical consideration that unseated land was often owned by speculators who lived elsewhere (unlike seated land, where the owners often lived on the property). *Erwin v. Helm*, 13 Serg. & Rawle 151, 154 (Pa. 1825) ("the owners of this species of property seldom, if ever, reside in the county, and as they offer no personal responsibility, the land itself is made debtor, and the process of recovery is directly against the thing"). It was therefore more efficient for Pennsylvania to tax unseated property in rem, with the property itself serving as the security, instead of attempting to track down absent property owners. That much being undisputed, the parties disagree on whether tax liability equates to an owner's "duty" for purposes of applying the *Powell* rule.

### B. Herder Spring Hunting Club v. Keller

More than a century after *Powell*, the Pennsylvania Supreme Court in *Herder Spring* considered whether a tax sale caused by the surface owner's tax default divested the subsurface owner of his interest in the estate when the subsurface owner did not report his interest to county commissioners before the tax sale. Answering in the affirmative, the Court explained that "the failure to report a severance of unseated land could result not only in a four-fold statutory penalty, but also had the practical effect of having the property assessed and taxed as a whole, given that the assessors were not required to determine the sometimes elusive current ownership." *Herder Spring*, 143 A.3d at 369.

11

Relevant here, the *Herder Spring* Court also addressed the limited remedy available to a subsurface estate owner under Pennsylvania's Act of March 13, 1815, P.L. 177, to protest an allegedly improper tax sale. Under the Act, a subsurface estate owner had a two-year window following a tax sale to challenge "the notice, assessment, and tax sale process" for irregularities. *Cornwall Mtn. Invs., L.P. v. Thomas E. Proctor Heirs Trust*, 158 A.3d 148, 160 (Pa. Super. 2017); *Herder Spring*, 143 A.3d at 365-66. After that time, "no alleged irregularity in the assessment, or in the process or otherwise" could affect title in the purchaser. *Herder Spring*, 143 A.3d at 366 (citation omitted). Instead, a tax sale could only be challenged as "void" when "there [are] jurisdictional defects." *Cornwall*, 158 A.3d at 160. Jurisdictional defects are situations "where seated property was improperly treated as unseated;" or "where unseated property was not correctly identified;" or "where the taxes were paid;" "or where the deed was forged;" "or where the treasurer lacked the authority to conduct the sale at the time." *Id.* at 160-61 (citations omitted). The two-year statute of limitation was meant to "protect the delinquent owner while also providing finality for the purchaser[.]" *Herder Spring*, 143 A.3d at 358.

The *Herder Spring* Court held that a "failure [by county commissioners] to assess [the] subsurface estate separately from the surface estate" was an irregularity, not a jurisdictional defect. *Herder Spring*, 143 A.3d at 374; *see also id.* ("[I]f the [subsurface estate owner] disputed the County Commissioners' failure to assess their subsurface estate separately from the surface estate, they should have contested the assessment and tax sale within the initial two-year redemption period."). Consequently, because the subsurface owner failed to challenge the assessment within the two-year redemption

12

period, any subsequent challenge was time-barred. *Id.* at 374-75. The Court commented that, although the tax-sale regime for unseated land may appear "harsh and severe" for landowners, "[a] vigilant owner has nothing to fear." *Id.* at 358-59 (citation omitted).

Finally, the Court appeared to narrowly construe the *Powell* rule in a way that would exclude its application to intentional defaults by unseated landowners. It explained:

> The Court in *Powell* questioned whether there was an equitable reason for forbidding the surface owner from purchasing the entire property at tax sale. This Court recognized that, as to unseated land where the tax was imposed on the land and therefore not the landowner's personal responsibility, nothing prevented "the holder of a defective title from purchasing a better one at a tax sale."

*Id.* at 360 (quoting *Powell*, 34 A. at 451).

The *Herder Spring* Court's construction of the *Powell* rule can be understood as saying that, because no person had a "duty" to pay taxes on unseated property before 1947 (when Pennsylvania changed its taxing regime), the *Powell* rule never applied to a tax sale of unseated land. *See id.* at 367 (noting that *Powell* "explained *the duty*, *or lack thereof*, of landowners to pay taxes: 'The whole was subject to a claim for taxes which existed before they acquired title, and which neither the surface nor the subsurface owner was under any obligation to the state to pay. If either the surface or subsurface owner had paid it, he could not have recovered of the other his proportionate share.'" (quoting *Powell*, 34 A. at 452) (emphasis added) (internal alterations omitted)).

13

### C. Whether McCauley's Status as an Agent of CPLC Constituted a Jurisdictional Defect that Nullifies the Title Wash

Finding that McCauley was CPLC's agent, and that CPLC itself triggered the tax sale by failing to pay the taxes owed in relation to the Haines Warrant, the District Court applied the *Powell* rule and held that McCauley's purchase of the property effected a mere redemption of CPLC's surface interest instead of a title wash, so the surface and subsurface rights did not merge. In reaching that conclusion, the District Court interpreted the *Powell* rule as differentiating between "personal liability" and the "duty to pay taxes."[11] (J.A. at 43-44.)

The District Court also pointed to the fact that a Pennsylvania statute (the Act of June 6, 1887) and case law framed the responsibility of the owner of unseated land to pay taxes as a duty. *See e.g.*, Act of June 6, 1887, P.L. 363, No. 248, § 1 (codified at 72 Pa. Stat and Const. Stat. § 5781) ("That after June first, [1888], all taxes levied upon unseated lands, within the counties of this Commonwealth, *shall* be paid by the owner or owners of such unseated lands within the year for which the same are levied[.]") (emphasis added); *Breisch v. Coxe*, 81 Pa. 336, 346 (Pa. 1876) ("It must be conceded that the payment of taxes is a duty, and a failure to perform it is the fault of the owner."); *Mayor of Phila. v. Riddle*, 25 Pa. 259, 263 (Pa. 1855) ("And though it is an owner's duty to pay taxes, what if he do[es] not? The law, instead of presuming his title abandoned, seizes and sells it to the highest bidder."); *M'Coy v. Michew*, 7 Watts & Serg. 386, 391

---

[11] The District Court interpreted the "no duty" language in *Herder Spring* as inadvertent and as dicta. (*See* J.A. at 46) ("Had the *Herder Spring* court intended such drastic outcomes, it would have made its holdings clear and explicit.")

14

(Pa. 1844) ("If there be hardship, it is one which can easily be avoided by performing the duty which the law imposes upon him, to return the land and pay his taxes."). The District Court therefore concluded that, while CPLC was not personally liable to pay taxes, it had a duty to do so. Accordingly, under the *Powell* rule, CPLC could not benefit from its failure to pay taxes and acquire better title through its agent, McCauley.

The distinction between a duty to pay taxes on one hand and personal liability for taxes on the other, although perhaps reconciling Pennsylvania's pre-1947 taxing system with the equitable rule in *Powell*, may conflict with *Herder Spring*'s seemingly more narrow reading of the *Powell* rule. Moreover, statutes and caselaw commonly use the word "duty" to denote liability. *See* "Duty," Black's Law Dictionary (11th ed. 2019) ("Duty is only a word with which we state our conclusion that there is or is not to be liability." (quoting William L. Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 15 (1953))). Given the state-law-specific nature of the foregoing "duty" analysis, the lack of certainty regarding the scope of the equitable rule articulated in *Powell*, and the implications of this case for other ongoing litigation and important property rights in the Commonwealth of Pennsylvania, we now submit this Petition for Certification to the Supreme Court of Pennsylvania.

### III. QUESTION FOR CONSIDERATION

In light of the foregoing, the following question of law is certified to the Supreme Court of Pennsylvania for disposition: ***whether, on the record provided here, a 1908 tax sale of an unseated parcel of land, induced by the surface owner's failure to pay taxes***

15

*on the estate, and made to an agent of the defaulting surface owner, constitutes a title wash, thereby divesting the subsurface owner of his interest in the estate.*

We shall retain jurisdiction of the appeal pending resolution of this certification.

s/ Kent A. Jordan<br>
Circuit Judge

Dated: October 11, 2023
JK/cc: All Counsel of Counsel

A True Copy:

Patricia S. Dodszuweit, Clerk

16